# United States Court of Appeals
### For the Eighth Circuit

_____

No. 25-2955

_____

Rick Hibbert

*Plaintiff - Appellant*

v.

MC Realty Group, LLC

*Defendant - Appellee*

UMB Financial Corporation, doing business as UMB Bank

*Defendant*

JanCo FS3, LLC, doing business as Velociti Services

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: May 14, 2026
Filed: July 30, 2026

_____

Before COLLOTON, Chief Judge, SHEPHERD and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Rick Hibbert was fired after a dispute with his employer about where to park. He sued his company and two others for disability discrimination, failure to accommodate, and retaliation. *See* 42 U.S.C. § 12101, *et seq.* The district court[1] granted summary judgment for the defendants. We affirm.

I.

Hibbert worked as a lead engineer for JanCo FS3, LLC d/b/a Velociti Services. He was assigned to support MC Realty Group, LLC in the UMB Bank buildings in Kansas City.[2] He had his ankle replaced in 2001, which affected his ability to run, stand, or sit still for any length of time and sometimes required him to stop and rest when walking longer distances. He worked at UMB's Technology Operations Center (Tech Center) for years after the surgery.

Hibbert testified that an average day on the job required walking most floors of the four-story, 272,000-square foot building. Sometimes he also walked to the 1010 Grand Building, located one to two blocks from the Tech Center. He received a permanent disabled parking placard in 2021 from the Missouri Department of Revenue, which allowed him to park in a handicap spot at the Tech Center.

His building assignment changed to 1010 Grand in June 2022, but his assigned parking spot remained at the Tech Center. Velociti manager Sheila Huke emailed Hibbert on June 14, 2022, asking for a photo of where he was parking. Hibbert sent a photo of his truck in a handicap spot at 1010 Grand. A week later, Huke sent an email to all the engineers telling them to park where assigned.

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

[2]Hibbert does not appeal the dismissed claims against UMB Bank.

In a June 24 email, Hibbert asked to park in the 1010 Grand building. Huke sent him Velociti's "Reasonable Accommodation Request Medical Certification" form a few days later along with a letter asking him to complete the form by July 12. The letter explained that after receiving the completed form, Velociti would hold a meeting with Hibbert to discuss the accommodation. Hibbert replied that he provided medical documentation in 2001, when his ankle was replaced, and that he might not be able to get updated documentation by the deadline. Huke told Hibbert that Velociti did not have files from 2001 and notified Velociti's Human Resources director, Nicole Gibson, who responded "[i]t's no rush [] to receive it back because we will only review once he returns it to us." Huke emailed Hibbert and set a new deadline of July 26, saying the paperwork was needed "before any accommodation can be discussed [] or arranged."

Huke updated her manager, Derek Mazurkewycz, and Gibson on July 19 about Hibbert and another Velociti employee who asked for a parking accommodation. She noted that Velociti was already providing the other employee handicap parking, though not in the building where he worked, and asked "[i]f the correct documents are not going to be provided, then he has nothing to complain about[,] correct?" Mazurkewycz responded that "the bigger issue" was both employees "have to walk more than 50 feet at a time to do their jobs" and "[i]f they cannot do it for parking purposes but can for their job[,] that just sound[ed] ridiculous to [him]." Huke responded, "I agree 110%."

Hibbert told Huke on July 21 that his regular doctor was on medical leave and the doctor filling in would not complete the form. Huke relayed the information to Gibson and Mazurkewycz. Gibson replied: "That doctor is not willing to complete the form because [Hibbert] doesn't need an accommodation. Well until he returns the documents it will be business as usual."

On the July 26 deadline, Hibbert told Huke he had an appointment scheduled, but on August 1, he told her he "hit a road block" with the paperwork. But he attached to the email his renewal paperwork for his Missouri handicap parking

placard. The paperwork did not include any medical documentation or description of his disability. Hibbert said in the email that his only restrictions were "not pushing snow manually and the need to park in a handicap parking spot closest to where [he was] working." The other employee also submitted his parking placard paperwork. On August 9, Huke told both of them that they needed to park in their assigned spots because they had not completed and returned the medical certification form.

Two weeks later, MC Realty's operations manager emailed Mazurkewycz and Huke about his frustrations with Velociti engineers and UMB parking spots. Velociti called a team meeting on August 26 and told the engineers they would be fired if they did not park in their assigned spots. Huke gave Hibbert Velociti's parking policy and told him to park in his assigned spot in the lower level of the Tech Center garage or in the handicap spot in that garage. Hibbert refused to sign the policy because "he had a disability placard and should be able to park in any space."

Hibbert continued to park at 1010 Grand. Velociti gave him a final warning for insubordination on August 29, suspended him when he parked there the next day, and fired him on September 14. The other employee parked in his assigned spot after the team meeting and still works for Velociti.

II.

We review the district court's grant of summary judgment *de novo*, affirming "if there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law." *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 543 (8th Cir. 2018). We can affirm on any ground supported by the record. *Id.*

A.

Hibbert argues that Velociti violated the ADA by denying his request to park at 1010 Grand.[3] For this failure to accommodate claim to survive summary judgment, he must "show that his employer failed to engage in the interactive process in good faith." *Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 457–58 (8th Cir. 2022) ("[A]n employee must demonstrate that the employer knew about his disability, [] that the employee requested an accommodation," that the employer "did not make a good faith effort to assist the employee in seeking accommodations," and that he "could have [been] reasonably accommodated." (citation omitted)). "A disabled employee must initiate the accommodation-seeking process by making his employer aware of the need for an accommodation" and "provide relevant details of his disability and, if not obvious, the reason that his disability requires an accommodation." *EEOC v. Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d 790, 795 (8th Cir. 2007).

Hibbert requested the parking accommodation in June 2022, so Velociti knew of his disability and his need for accommodation. But he did not provide medical documentation explaining his disability and limitations, which Velociti requested and required under its company policy. Any "breakdown in the interactive process was due to [Hibbert's] failure to provide an updated evaluation, not [Velociti's] refusal to provide an accommodation." *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1045 (8th Cir. 2005); *see also Nahal v. Allina Health Sys.*, 842 F. App'x. 9, 10 (8th Cir. 2021) (per curiam) (plaintiff "did not provide any medical documentation to clarify his disability, explain the resulting limitations on his work, or suggest a reasonable accommodation" so breakdown in interactive process could not be attributed to defendant).

---

[3]Hibbert often groups Velociti and MC Realty together, making claims against "appellees." But the record shows that Hibbert only requested an accommodation from Velociti and that Velociti fired him. The only thing MC Realty did was make the statements discussed below. *See infra* note 5.

The interactive process is meant to be informal and flexible, but Hibbert was "responsible for providing relevant information about [his] condition and needs." *Kowitz v. Trinity Health*, 839 F.3d 742, 746 (8th Cir. 2016). Hibbert said he would complete the medical certification form but only submitted his handicap parking paperwork. That paperwork did not "provide relevant details of his disability" or show the extent of his limitations, *Convergys*, 491 F.3d at 795, which was particularly relevant here, where Hibbert walked and climbed ladders for his job without accommodation.[4] Without medical information explaining his disability, Velociti could not know "the specific limitations imposed by [Hibbert's] disability," *id.* (citation omitted), and "could not provide an appropriate accommodation," *Kratzer*, 398 F.3d at 1045; *see Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) ("An employer cannot be expected to propose reasonable accommodation absent critical information on the employee's medical condition and the limitations it imposes."); *see also Convergys*, 491 F.3d at 795 ("[A]n employee will typically have better access to information concerning his limitations and abilities whereas an employer will typically have better access to information regarding possible alternative duties or positions available to the disabled employee." (citation omitted)).

## B.

Hibbert's remaining claims—intentional disability discrimination, retaliation for requesting an accommodation, and retaliation for his "expressions of opposition to Appellees' parking policy directive"—are based on Velociti's decision to fire him. Discrimination and retaliation can be proven "either by direct or indirect evidence." *Lipp*, 911 F.3d at 543 (discrimination); *see Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042 (8th Cir. 2007) (retaliation). In the absence of direct evidence, we apply the *McDonnell Douglas* burden-shifting framework: if the plaintiff establishes a prima facie case of discrimination, the defendant must "show a legitimate,

---

[4]Hibbert argues there is a question of fact about his job requirements and whether they conflicted with his requested parking accommodation, but he testified that he did these activities as part of his job.

nondiscriminatory reason for the adverse action," which the plaintiff must rebut as pretextual. *Lipp*, 911 F.3d at 544 (citation omitted); *see Stewart*, 481 F.3d at 1042–43.

Hibbert does not have direct evidence of discrimination or retaliation. Direct evidence is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 902 (8th Cir. 2015) (citation omitted). Hibbert cites statements by Huke, Mazurkewycz, and Gibson—that Hibbert was unwilling to complete the medical certification form because "he did not need an accommodation," that it was "ridiculous" that he could walk for his job but not "for parking purposes," and that "the ADA is dead in the water" without the form. While these statements may show that his supervisors did not believe Hibbert needed an accommodation, they are not enough to show that the decision to fire him was motivated by discriminatory animus based on his disability. *See Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 n.3 (8th Cir. 2016) (evidence that employer suspected employee had been lying about having cancer showed employer "might have targeted" her for being "untruthful, not because of her disability").

With no direct evidence, we apply the *McDonnell Douglas* framework. We assume without deciding that Hibbert has established a prima facie case for his disability discrimination and retaliation claims. *See Stewart*, 481 F.3d at 1043 ("[I]f an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext . . . ."). Velociti has a "legitimate, non-discriminatory reason" for its decision—Hibbert was fired because of insubordination for continuing to violate the company's parking policy. *Winters v. Deere & Co.*, 63 F.4th 685, 690 (8th Cir. 2023). Hibbert must show this reason was pretextual by "present[ing] sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *Id.* (citation omitted).

-7-

Hibbert has not done either. The record does not support an inference that Velociti's decision to fire him in September of 2022 was motivated by Hibbert's disability or his request for accommodation. There is no evidence, for example, that Velociti "failed to follow its own policies" or "treated similarly-situated employees in a disparate manner." *Id.* (citation omitted) (listing ways a plaintiff can show pretext). It is undisputed Velociti gave Hibbert its parking policy and repeatedly told him that he was violating it. Velociti also warned its engineers that they would be fired if they failed to follow the policy. When Hibbert did not follow the policy, Velociti suspended and fired him. The employee who made the same request and provided the same evidence of disability but followed the policy after being warned is still employed. And there is no evidence that Velociti "shifted its explanation" for firing Hibbert; the only reason it has ever given is Hibbert's repeated violations of the parking policy. *Id.* (citation omitted).

Nor are the statements by Huke, Mazurkewycz, and Gibson "sufficient evidence for a reasonable trier of fact to infer discrimination" was the real reason for firing Hibbert. *Id.* (citation omitted). They were made in late July and early August and related to Hibbert's accommodation request and failure to complete the medical certification form. While they showed frustration with the accommodations process, none involved the decision to suspend Hibbert at the end of August or fire him in September. Those decisions instead came after Hibbert continued to violate company policy and disregard disciplinary warnings.[5] Hibbert argues that he would

_____

[5]Hibbert points to statements by MC Realty's operations manager as evidence of discriminatory animus and pretext, but that manager was not in charge of Hibbert's employment. *See Arraleh v. County of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006) ("We have carefully distinguished between comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions, from . . . statements by nondecisionmakers . . . ." (citation omitted)); *Wittenburg v. Am. Express Fin. Advisors, Inc*, 464 F.3d 831, 837 (8th Cir. 2006) ("A plaintiff must establish '*some* causal relationship' to show 'the significance of . . . statements made by persons other than the relevant decision-maker, to the resolution of the ultimate issue of intentional discrimination.'" (citation omitted)). And even if he had influence over

not have been insubordinate if his accommodation had been granted, but that does not change the fact that "the motivating reason for the dismissal was misconduct, not [his] underlying disability." *Huber v. Westar Foods, Inc.*, 139 F.4th 615, 627 (8th Cir. 2025) (en banc).

Similarly, Hibbert has not shown Velociti's reason for firing him was to retaliate for his "expressions of opposition" to a parking policy he believed violated the ADA. *See Foster v. Time Warner Ent. Co.*, 250 F.3d 1189, 1195 (8th Cir. 2001) (opposing policies believed to be discriminatory is protected activity). He claims these expressions were made verbally and "through his refusal to sign the Parking Policy or the corrective action he received near the end of August 2022." He points to the close temporal proximity between his opposition and when he was fired, but "close timing can rarely show pretext on its own." *Huber*, 139 F.4th at 625. And Hibbert has no other evidence suggesting that Velociti's "real reason" for firing him was his refusal to sign documents or his verbal opposition to the policy. *Winters*, 63 F.4th at 690. The record instead suggests that, despite multiple warnings, Hibbert continued to park in a garage he was not assigned to. Without evidence for a jury to find that Velociti's reason "is unworthy of credence because it has no basis in fact" or that a "prohibited reason likely motivated [Velociti]," Hibbert's claim fails. *Lors v. Dean*, 746 F.3d 857, 868 (8th Cir. 2014) (citation omitted).

III.

We affirm.

_____

---

the Velociti managers, Hibbert does not point us to any statements that show discrimination, rather than insubordination, was the real reason for firing him. *See Winters*, 63 F.4th at 690.